**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joy Handy, | No. CV-19-04545-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner" or "SSA") denial of Plaintiff's application for Title XVI Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 13, "Pl. Br."), the Commissioner's Response (Doc. 14, "Def. Br."), Plaintiff's Reply (Doc. 15, "Reply"), and the Administrative Record (Doc. 12, "R."). For the following reasons, the Court will affirm the decision.

**I.    BACKGROUND**

Plaintiff filed her application on May 6, 2015, alleging disability beginning July 15, 2011. (R. at 18.) The application was denied at the initial and reconsideration levels, and a hearing before an administrative law judge ("ALJ") was held on October 23, 2017. (*Id.*) The ALJ issued a decision finding Plaintiff not disabled. (*Id.* at 18–32.) The Appeals Council upheld the decision and thus it became final. (*Id.* at 1–3.)

Therein, the ALJ found Plaintiff had severe impairments of degenerative disc

disease, peripheral neuropathy, myofascial pain syndrome, chronic pain syndrome, carpal tunnel syndrome, obesity, venous insufficiency, migraines, and occipital neuralgia. (*Id.* at 20.) Despite these impairments, the ALJ found

> [Plaintiff] has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 416.97(b) except occasional climbing of ramps and stairs; no climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; and frequent handling and fingering. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and vibration. She is limited to moderate noise and no hazards.

(*Id.* at 25.) Based on this RFC and testimony from a vocational expert ("VE"), the ALJ found Plaintiff was capable of performing past relevant work as a Waitress and Restaurant Cashier and was therefore not "disabled." (*Id.* at 31.)

## II. LEGAL STANDARD

The Court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). In reviewing the decision, the Court only reviews issues raised by the party challenging the decision. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75. "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons

provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Id.* The Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error is harmless if it is "inconsequential to the ultimate nondisability determination," *id.* at 1122, or "'if the [ALJ's] path may reasonably be discerned,' even if the [ALJ] 'explains [his or her] decision with less than ideal clarity,'" *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (U.S. 2004)).

In determining whether a claimant is "disabled," the ALJ employs a five-step sequential evaluation. 20 C.F.R. § 416.920(a)(4). In brief, the ALJ determines whether the claimant: (1) is "doing substantial gainful activity"; (2) has a "severe" medically determinable impairment or combination of impairments that has lasted more than 12 months; (3) has an impairment that "meets or equals" an impairment listed in appendix 1 of subpart P of 20 C.F.R. § 404; (4) can perform "past relevant work" based on his or her RFC; and (5) "can make an adjustment to other work" based on his or her RFC, age, education, and work experience. *Id.* The claimant bears the burden of proof at steps one through four until it shifts to the ALJ at step five. *Molina*, 674 F.3d at 1110.

## III. ANALYSIS

### A. The ALJ Did Not Abuse Her Discretion In Declining To Reopen Plaintiff's Prior Application For Benefits.

Plaintiff's first assignment of error is that the ALJ failed to provide "supporting rationale" for her decision to not reopen Plaintiff's prior application in violation of Plaintiff's due process rights and HALLEX I-2-9-10(A).[1] (Pl. Br. at 14–15.)

The Commissioner's regulations provide that:

A determination, revised determination, decision, or revision decision may

---

[1] HALLEX refers to the Commissioner's Hearings Appeals and Litigation Law Manual. (*See* Def. Br. at 7.)

- 3 -

    be reopened–

    (a) Within 12 months of the date of the notice of the initial determination, for any reason;

    (b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or

    (c) At any time if it was obtained by fraud or similar fault.

20 C.F.R. § 416.1488. "Because the SSA's decision whether, for good cause shown, to . . . reopen an earlier application is strictly discretionary, it is not final and thus not generally reviewable by a district court." *Dexter v. Colvin*, 731 F.3d 977, 980 (9th Cir. 2013) (citations omitted). "An exception to this rule exists for 'any colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination.'" *Id.* (citations omitted); *see Califano v. Sanders*, 430 U.S. 99, 107–09 (1977) (holding that SSA's refusal to reopen prior application is not reviewable absent constitutional challenge). Any challenge to the Commissioner's decision based on noncompliance with HALLEX is not reviewable because "HALLEX does not have the force and effect of law" and is therefore "not binding on the Commissioner." *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

    Here, Plaintiff filed a prior application on June 4, 2014, which was denied at the initial level on September 18, 2014. (R. at 74.) Plaintiff did not appeal the denial. At the hearing, she requested that this prior application be reopened. (*Id.* at 43.) She noted that the present "application was filed within 12 months of the prior application." (*Id.*) Plaintiff maintained that the prior application could therefore be reopened for "any reason." (*Id.* at 44.) Her "reason" was that she was not represented at the time of the prior application's pendency and denial. (*Id.* at 44–45.) The ALJ denied Plaintiff's request, finding that "the record, as discussed within this decision, does not establish a reason for revising the prior determination." (*Id.* at 18.)

The Court finds no abuse of discretion. First, Plaintiff's citation to provisions of HALLEX in support of her allegation are inapposite because the Court does not review allegations of noncompliance with HALLEX. Second, Plaintiff fails to show any "colorable" due process violation. At the hearing, Plaintiff apparently misread the pertinent regulation which states that a prior determination (application) may be reopened "for any reason" within "12 months of *the date of the notice of the initial determination*." 20 C.F.R. § 416.1488(a) (emphasis added). It also may be reopened "[w]ithin two years of the date of the notice of the initial determination" for "good cause." *Id.* § 416.1488(b). In either case, the date of *filing* is irrelevant. Here, the key date–the date of the initial determination for the prior application–is September 18, 2014. (R. at 74.) Plaintiff requested to reopen it on October 23, 2017–*over three years later*. (*Id.* at 18.) Given this three-year difference, the only basis for the ALJ to reopen the prior application was for evidence of "fraud or similar fault." *Id.* § 416.1488(c). Plaintiff makes no allegation or showing of such, either at the hearing or in her briefs here. Therefore, the Court finds no abuse of discretion in the ALJ's refusal to reopen the prior application.

**B. The ALJ Properly Discounted Plaintiff's Subjective Allegations Of Disabling Symptoms And Limitations.**

Plaintiff's second assignment of error is that the ALJ improperly discounted her pain and symptom testimony. (Pl. Br. at 15–17.)

Absent evidence of malingering, an ALJ may only discount a claimant's statements for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099.

"[T]he ALJ may consider inconsistencies either in the claimant's testimony or

between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Lastly, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found that Plaintiff's statements were not "entirely consistent with the medical evidence and other evidence." (R. at 26.) Specifically, the ALJ found a lack of clinical evidence to support the degree of impairment alleged, effectiveness of medication and injection treatments in relieving symptoms, and inconsistencies between Plaintiff's allegations and reported activity levels and between her statements. (*Id.* at 29–30.)

First, Plaintiff's alleges that the ALJ erred in considering her daily activities. (Pl. Br. at 15.) With respect to Plaintiff's activities, the ALJ found:

> Even where the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in the view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimants reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

- 6 -

(R. at 30.) Plaintiff maintains that the fact that her limited daily activities cannot be "objectively verified" is not a specific reason to reject her testimony. (Pl. Br. at 15.) Plaintiff is not entirely correct. While a lack of corroborative objective evidence is insufficient *on its own* to discount a claimant's allegations, it nonetheless remains *a factor* in the credibility analysis–which Plaintiff concedes. (*Id.*) Thus, so long as the ALJ did not rely *solely* on a lack of objective medical evidence to support the degree of limitation alleged–which she did not–this reason was not relied on in error.

Additionally, Plaintiff alleges that the ALJ erred by failing to explain how her daily activities are transferable to the work setting. (*Id.* at 17.) However, the ALJ is not required to show that a claimant's activities are transferable to the work setting in order to discount her testimony on their account. Rather, an ALJ may consider whether a claimant engages in daily activities that are simply inconsistent with her allegations or that suggest that they are exaggerated, irrespective of whether the activities are transferable to a work setting. *Molina*, 674 F.3d at 1112; *Valentine*, 574 F.3d at 694. Here, the ALJ did just that. For instance, the ALJ noted that records mentioned Plaintiff "'[going] everywhere on a bike' in mid-2014," which Plaintiff does not dispute. (R. at 29 (citing R. at 315).) Plaintiff does, however, dispute the ALJ's reliance on an inconsistency between statements she made regarding her walking ability. (Pl. Br. at 17.) As noted by the ALJ, Plaintiff stated in her application that she was unable to walk more than 10-15 feet without stopping to rest. (R. at 26 (citing R. at 222).) However, as further noted by the ALJ, Plaintiff told a physical therapist that she "is unable to walk 200 feet without [her] walker" and has difficulty walking 400 yards even with her walker.[2] (*Id.* at 858, 29.) The mere inconsistency between these statements, irrespective of the truth of the matter asserted, was a valid reason to

---

[2] The ALJ found that there was "no evidence to support the functional need of a walker." (*Id.* at 29.) Moreover, Plaintiff did not indicate her walker was prescribed in her application. (*Id.* at 223.) *See generally* SSR 96-9p (explaining that for an ALJ to "find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed").

discount Plaintiff's allegations. *See Molina*, 674 F.3d at 1112.

Next, Plaintiff alleges that the ALJ's characterization of the medical evidence as "weak" and citation to "other factors," as detailed *supra*, were "vague" and not specific reasons to reject her testimony. (Pl. Br. at 15.) Indeed, the ALJ's statement, when read in isolation, is arguably vague. However, when read in context of the entire decision, it is not as the ALJ provided a thorough discussion and analysis of the pertinent medical evidence earlier in the decision. (*See* R. at 26–29.) Relatedly, Plaintiff alleges that the ALJ "failed to identify which testimony she deemed incredible as a result of normal muscle tone and strength." (Pl. Br. at 16.) Plaintiff maintains that "normal muscle tone and strength is entirely unrelated to headaches, migraines, stiffness, leg cramps, general pain, swelling, drowsiness, and a cloudy mind and, thus, couldn't provide a basis for the ALJ to discount [her] testimony concerning those impairments." (*Id.*) Indeed, while these findings may not be relevant to every alleged impairment, they are relevant to Plaintiff's assertion that she is unable to lift more than 5-10 pounds, as noted by the ALJ. (*Id.* at 26 (citing *id.* at 222).) The Court is able to reasonably discern the ALJ's path because the decision contains a thorough discussion of the pertinent testimony and evidence. (*See* R. at 26–30.) The Court does not find harmful error merely because the ALJ did not meticulously and proximately link such conflicting testimony and evidence. *See Alaska Dep't of Envtl. Conserv.*, 540 U.S. at 497; *Treichler*, 775 F.3d at 1099.

Plaintiff next disputes the ALJ's interpretation of certain medical evidence. First, Plaintiff disputes the ALJ's reliance on "a 2016 antinuclear antibody comprehensive panel report" to discredit her complaints related to "chronic myofascial pain, peripheral neuropathy and pain medications." (Pl. Br. at 16 (citing R. at 26).) The error, according to Plaintiff, is that the "ALJ provides no information of how the testing is related to these conditions." (*Id.*) The Court agrees. The record indicates that this panel was ordered by Plaintiff's neurologist who diagnosed Plaintiff with cervicogenic migraines ("likely occipital neuralgia") and carpal tunnel syndrome in her right arm. (R. at 1588, 1591–93.) However, the record contains only the raw data from the panel and contains no physician's

interpretation of the data. (*Id.* at 1595–98.) The ALJ's lay interpretation that the findings from the panel somehow diminished Plaintiff's allegations regarding the aforementioned conditions is not evidence. Absent a medical interpretation of the data and explanation of its clinical significance in the record, the ALJ was not entitled to rely on it to discount Plaintiff's allegations.

Second, Plaintiff disputes the ALJ's reliance on "normal exam findings during an emergency room visit for uncontrolled headaches." (Pl. Br. at 16.) As an initial matter, the ALJ discusses multiple visits to the emergency room for headaches so it is not clear which one Plaintiff is referring to.[3] (R. at 28–29 (citing records).) The ALJ noted that while Plaintiff "went to the emergency room at times with increased symptoms," she "was treated routinely with medication." (*Id.* at 28–29 (citing records).) She further noted that at these visits Plaintiff "exhibited full neck range of motion, normal back range of motion, normal strength, normal gait, and normal coordination." (*Id.* at 29.) The ALJ notes one visit in particular where Plaintiff presented with a headache that "reportedly had lasted a week or more" but admitted to taking nothing to relieve it. (*Id.* at 28 (citing *id.* at 298–304).) The Court finds no error.

Third, Plaintiff disputes the ALJ's reliance on "normal exam findings during . . . an October 20, 2014 appointment where her pain was so severe that she was scheduled for bilateral trigger point injections into the superior trapezius muscles and occipitalis muscles." (Pl. Br. at 16 (citing R. at 400).) In citing to records from this appointment, the ALJ found that Plaintiff had "adequate pain relief" from her medication regimen. (R. at 28 (citing R. at 400–01 [duplicates at 589–90]).) As noted by Plaintiff, she was, in fact, scheduled for bilateral trigger point injections at this appointment. (*Id.* at 400, 589.) After receiving the injections, Plaintiff reported "effective but transient relief." (*Id.* at 396, 581.) However, in considering the record as a whole, Plaintiff frequently reported that her pain was well-controlled with medication, which included Percocet. (*Id.* at 593, 589, 541, 553,

---

[3] In fact, the record contains numerous visits to the emergency department for complaints of headaches, including some not discussed by the ALJ. (*See* R. at 298, 479, 486, 618, 724, 729, 735, 742, 748, 754, 760.)

549, 1191, 1161, 1157.) The ALJ noted that Plaintiff "was pleased with her overall function and quality of life." (*Id.* at 27 (citing *id.* at 1064).) Additionally, the ALJ noted that while Plaintiff underwent "routine and conservative" treatment, she also underwent "therapeutic injections, which would normally weigh somewhat in [her] favor." (*Id.* at 29.) However, the ALJ found that these injections were "generally successful" in controlling Plaintiff's symptoms. (*Id.*) Indeed, Plaintiff reported relief from injection therapy. (*Id.* at 1087, 573, 561.) Thus, the ALJ did not err in discounting Plaintiff's pain testimony on account that she experienced relief of her symptoms through use of medication and injection treatment.

Lastly, Plaintiff disputes the ALJ's reliance on the fact that she only had one recommendation for surgery. (Pl. Br. at 17.) The Court agrees with Plaintiff that "[i]t is unclear why a person would need more than one recommendation for surgery or how that detracts from the severity of [her] pain." (*Id.*) While an ALJ may consider if a claimant undergoes treatment, the Court is unaware of any authority that says that the fact that a claimant only has one recommendation for surgery is a clear and convincing reason for discounting the claimant's allegations.

In conclusion, the Court finds that Plaintiff's allegations were properly discounted because the ALJ proffered specific, clear, and convincing reasons supported by substantial evidence for doing so. Any error by the ALJ in relying on reasons the Court found not to be valid is harmless. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

**IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this case.

Dated this 24th day of September, 2020.

Honorable John Z. Boyle
United States Magistrate Judge